UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Maurice Newby** | \* |
| **PSC 2** | \* |
| **BOX 12152** | \* |
| **APO AE 09012** | \* |
| | \* |
| *Plaintiff*, | \* |
| | \* |
| | \*   **Case No.:** 21-1629 |
| | \* |
| v. | \* |
| | \* |
| | \* |
| **Lloyd J. Austin III, Secretary,** | \*   **JURY TRIAL DEMANDED** |
| **U.S. Department of Defense** | \* |
| **1000 Defense Pentagon** | \* |
| **Washington, D.C. 20301** | \* |
| | \* |
| *Defendant*. | \* |
| | \* |
| **Serve:** | \* |
| | \* |
| **Lloyd J. Austin III, Secretary,** | \* |
| **U.S. Department of Defense** | \* |
| **1000 Defense Pentagon** | \* |
| **Washington, D.C. 20301** | \* |
| | \* |
| **Kimberly C. Blanton Day** | \* |
| **Senior Associate General Counsel** | \* |
| **Army and Air Force Exchange Service** | \* |
| **3911 S. Walton Walker Blvd., 5th Flr. (GC-E)** | \* |
| **Dallas, TX 75236** | \* |
| | \* |

# COMPLAINT

COMES NOW, Plaintiff, Maurice Newby (hereinafter "Plaintiff" or "Mr. Newby"), by and through his undersigned counsel Dionna Maria Lewis, Esq. complains against Defendant, Lloyd J. Austin III, Secretary, U.S. Department of Defense (hereinafter "Defendant" or "Agency") and in support thereof states as follows:

1

## INTRODUCTION

1.     This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), and the Civil Rights Act of 1866, Section 1981(a) ("Section 1981") for the Defendant's unlawful harassment, discrimination, and hostile work environment based on race (African American) and retaliation (prior statutorily protected activity) against the Plaintiff.

## JURISDICTION AND VENUE

2.     This Honorable Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, and Section 1981 of the Civil Rights Act, to redress and enjoin employment practices of the Defendant.

3.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

4.     Venue for this action is predicated upon 28 U.S.C. § 1391(b) and (c). The Agency U.S. Department of Defense is headquartered within the District of Columbia and is thus deemed to reside within this judicial district, and subject to the court's personal jurisdiction with respect to this civil action. Accordingly, venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b) and (c).

## EXHAUSTION OF REMEDIES

5.     Plaintiff has exhausted all of his administrative remedies.

6. Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 3, 2015, alleging discrimination based on race (African American) and retaliation (prior statutorily protected activity).

7. On March 24, 2021, Plaintiff received notice through email from the EEOC, informing Plaintiff that an Appellate Decision has been issued, entering Summary Judgment in favor of the Agency.

8. Accordingly, Plaintiff timely files this action in accordance with the EEOC's notice, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the decision.

## NATURE OF THE ACTION

9. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

10. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

11. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

12. Plaintiff Maurice Newby is an African American male who resides in Ramstein, Germany, where he currently works for the Defendant Agency.

13. Defendant is a United States agency, which is headquartered in the District of Columbia.

14. During the relevant period, the Defendant Agency employed Plaintiff Mr. Newby.

15. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

16. Mr. Newby contends that the Agency discriminated against him based on his race (African American), and as reprisal for opposing discriminatory policies or practices.

17. Beginning in March 2014, Mr. Newby was a Regular Part-Time Exchange Safety and Security Assistant (ESSA), at KMCC Loss Prevention, Ramstein, Germany.

18. On November 14, 2014, Mr. Newby's first-level supervisor was Ken Randell ("Mr. Randell") (African American), KMCC, Ramstein Germany; second-level supervisor was Mr. Brian Smith ("Mr. Smith") (Caucasian), Europe Area 52, Ramstein, Germany; third-level supervisor was Mr. Michael Conrad ("Mr. Conrad") (Caucasian), European Regional Chief, Ramstein, Germany; fourth- level supervisor was Rick Koloski ("Mr. Koloski") (Caucasian), Vice President of Loss Prevention, Dallas, Texas.

19. On November 14, 2014, the Exchange posted Vacancy Announcement No. H-020901-2014 for a Regular Full Time ESSA position at the KMCC Loss Prevention Office.

20. The selectee would (a.) conduct surveillance in retail, food, and service facilities to detect acts of shoplifting, pilferage, or other illegal or dishonest acts; (b.) survey physical working conditions or work practices which could result in injury or illness to customers, associates, or damage to property; and (c.) be required to prevent or reduce losses due to shoplifting, associate theft, and injuries from unsafe practices and health hazards.

21. The applicants for Vacancy Announcement No. H-020901-2014 were referred for selection by Wendi Becker (Caucasian female), Supervisory Human Resources (HR) Tech.

22. The selectee for this position would report to KMCC Loss Prevention Manager, Ken Randell.

23. Mr. Randell was out of work for a back injury, but informed Ms. Becker in HR that he planned to hold interviews for the RFT ESSA position when he returned to work and felt that he should be part of the process.

24. On or around December 4, 2014, while Mr. Randell was on medical leave, RPT ESSA Justin Bartoli (Caucasian), a member of the applicant pool filed a complaint with Mr. Smith stating that Mr. Randell (African American) was biased toward Caucasian employees, and claimed that he was trying to unfairly advance Mr. Newby (African American).

25. Mr. Smith effectively removed Mr. Randell, an African American, as the selecting official, even though the selectee would work directly under Mr. Randell.

26. Mr. Smith appointed Albert Arseneau (Caucasian male), Loss Prevention Manager, Baitholder, Germany, to take over Mr. Randell's role as selecting official.

27. On December 16, 2014, Mr. Arseneau was given the top five (5) candidates by Ms. Becker based on their NOMAD rankings score. The top five candidates were 1.) Mr. Newby; 2.) Kevin McNeill; 3.) Jonathan Bailey; 4.) Jimmie Tolbert; and 5.) William Lowden.

28. Mr. Newby had the highest NOMAD ranking, with total points equating to 283.86, while Mr. Lowden had the lowest NOMAD ranking of the five candidates at 269.42 points. Additionally, Mr. Newby had nine (9) years of experience as an AAFES Loss Prevention Detective, compared to Mr. Lowden's seven (7) years. Further, former KMCC Chief Human resource Manager Robyn Wiseman, noted that Mr. Newby was the top candidate.

29. On December 28, 2014, upon completion of the interviews, Mr. Arseneau selected Mr. William Lowden to fill the role of RFT ESSA. Mr. Lowden was selected for this position despite having the lowest NOMAD score, and had two (2) disciplinary actions in his personnel file, including being cited for sexual misconduct, resulting in his removal from a managerial position.

30. On March 3, 2015, Mr. Newby engaged in statutorily protected activity and filed a formal complaint alleging discrimination based on race discrimination.

31. On June 2, 2015, Mr. Smith requested a meeting with Mr. Newby. At this meeting, Mr. Smith harassed and questioned Mr. Newby regarding his previously filed March 3, 2015 EEO complaint which shocked, intimidated, and made Mr. Newby feel uncomfortable.

32. On September 29, 2015, Ken Randell sent out another email inquiring about employees that may be interested in a temporary work assignment at the Pulaski and Ramstein Expresses; Mr. Newby responded to this email the same day expressing his interest.

33. On October 8, 2015, Mr. Randell again verbally asked Mr. Newby if he was still interested in the new position at Pulaski. Mr. Newby indicated on this day and again on October 14, 2015 that he was indeed interested.

34. Mr. Randell sent out an email on October 23, 2015 that the employee selected for the temporary position had been selected and would take effect on November 7, 2015. Mr. Newby was not selected for the position.

35. Mr. Newby was never given any reasoning why he was passed up for the opportunity, especially following the repeated inquiries concerning his interest in the position.

36. On February 25, 2016, Mr. Newby filed his second formal EEO complaint claiming discrimination based on retaliation and reprisal for his prior EEO complaint.

37. On May 24, 2016, Mr. Newby filed his third EEO complaint for discrimination based on race and national origin.

38. In Mr. Newby's May 24, 2016, EEO complaint, he discusses an incident which occurred with Ms. Andrea Eickelberg (Caucasian) who made a racially insensitive comment to Mr. Newby and another African American employee, calling them "Chocolate men." Additionally, Mr. Newby would be harassed where comments were made to him that he is a "sexy chocolate man" or "you are wearing panty-dropping cologne." Such comments were made to Mr. Newby in the presence of two other African American colleagues.

39. Based on reason and belief, Mr. Newby was discriminated against when he was not selected for the Regular Full Time ESSA position at the KMCC Loss Prevention Office, yet a less qualified Caucasian male, William Lowden, was.

40. Based on reason and belief, Mr. Newby was retaliated against when he was not selected for the temporary work assignment at the Pulaski and Ramstein Expresses, which was a desirable opportunity with significant benefits.

41. As a result of this discrimination and retaliation, Plaintiff has been gravely impacted with regards to the terms and conditions of his employment, his compensation and benefits, and emotional distress.

## COUNT I

### VIOLATION OF TITLE VII – RACE DISCRIMINATION

42. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

43. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an

7

adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

44. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is African American, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified Exchange Safety and Security Assistant, as he has the highest NOMAD score out of all five (5) of the other applicants who applied for the role of RFT ESSA. The Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when he was not chosen to fill the role of RFT ESSA, despite having the highest NOMAD score of 283.86, and nine (9) years of AAFES Loss Prevention Detective experience, compared to William Lowden's seven (7) years.. The similarly situated Caucasian comparator William Lowden despite having the lowest score out of all applicants, had less AAFES Loss Prevention Detective experience than Mr. Newby, and who had two (2) disciplinary actions in his personnel file, including being cited for sexual misconduct resulting in his removal from a managerial position, was chosen for the position. Lastly, the above-mentioned preferential treatment of Caucasian employees gives an inference of race discrimination and prejudice.

45. Plaintiff is a member of a protected class as an African American man.

46. Because of his race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

47. Defendants' foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

48. Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race.

49. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

50. Defendant reprimanded Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his race.

51. Other employees who were similarly situated, but were non-Hispanic or Caucasian individuals, which is different from the Plaintiff, have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and workplace conditions.

52. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

53. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

54. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

55. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race.

56. Defendant discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

57. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

58. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

59. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

60. Further, Defendant's treatment and actions are ongoing.

61. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

62. Similarly, situated non-Hispanic and Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

63. The Defendant Agency must comply with Title VII, but by and through their conduct, have violated Title VII.

## COUNT II

### VIOLATION OF TITLE VII – RETALIATION

64. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

65. Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id*. § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986).

66. Here, the Plaintiff faced retaliation for his prior statutorily protected activity, (EEOC complaint on March 3, 2015), when Plaintiff was harassed and intimidated by Mr. Smith regarding the EEOC complaint, and was not given a position at Pulaski Express despite having years of requisite experience, and a high NOMAD score of 283.86.

67. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

68. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEOC representative, or otherwise should have known that Plaintiff engaged in the complaint process based on his informal and formal complaint filings.

69. The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

70. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

71. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

72. Similarly situated employees (no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

73. Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

74. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

75. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

76. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

77. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

78. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

79. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

80. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

81. The Defendant Agency must comply with Title VII, and by and through their conduct, violated the law.

82. Defendants actions were intentional, reckless, and malicious.

83. The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot offer any legitimate reason for their unlawful conduct.

## COUNT III

## VIOLATION OF SECTION 1981

84. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

85. As an African American, Plaintiff is a member of a protected class.

86. Because of his race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1981.

87. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

88. Defendant knew that Plaintiff is an African American prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of his race.

89. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African American).

90. Defendant has limited, segregated, and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee, because of his race (African American).

91. Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of employment.

92. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

93. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

94. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Mr. Maurice Newby, respectfully prays that this Court grant him the following relief:

a. Enter a declaratory judgment finding that the foregoing actions of Defendant violated Title VII and Section 1981;

b. Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c. Award compensatory damages in the amount of $750,000.00 that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages,

lost job benefits, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress caused by the conduct of the Defendant alleged herein;

      d.      Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

      e.      Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: June 15, 2021

                                              Respectfully submitted,

                                              */s/ Dionna Maria Lewis*

                                              _____
                                              Dionna Maria Lewis, Esq.
                                              District Legal Group, PLLC
                                              Bar No. 216016
                                              700 Pennsylvania Ave, SE, Suite 2098
                                              Washington, D.C. 20003
                                              Phone: (202) 486-3478
                                              Dionna@DistrictLegalGroup.com
                                              *Counsel for Plaintiff Maurice Newby*